## PRIMARY AND SECONDARY LIABILITY ON A PROMISSORY NOTE.

Common Pleas Court of Hamilton County.

THE FIRST NATIONAL BANK v. J. M. WILSON ET AL.

Decided, December 2, 1912.

*Promissory Notes—Reliance Upon Form of Note to Support Claim that Endorsers Were Not Co-Sureties with One of the Makers, But Sureties for Him—Finding as Between Accommodation Maker and Endorsers—Section 11713.*

Where the endorsers on a note are not parties to an arrangement between the makers, whereby one of them was to be a mere surety for such endorsers, he is as to such endorsers a maker and not entitled to the rights of a co-surety.

*D. C. Keller,* for H. E. Langdon.
*Charles Broadwell,* for Ellis Smith and Philip Whitacre.
*C. B. Dechant,* for Emma Debold, administratrix.

HUNT, J.

In·this action a judgment has been rendered in favor of the plaintiff against the makers and indorsers upon the following note:

"MORROW, OHIO, July 2d, 1911.

"90 Days after Date, We, or Either or Us, Promise to Pay to the Order of the First National Bank, of Morrow, Ohio, $2,000.00 Two Thousand Dollars. Value Received. Payable at the above named Bank, with 6% interest from date.

"(Signed) J. M. WILSON.

"H. E. LANGDON."

"Indorsed by Ellis Smith, George Debold, Phillip Whitacre."

George Debold died and his administratrix was made party defendant.

The case now comes on upon an application for a finding as to who is primarily liable and who secondarily liable under Section 11713, General Code.

There is some question as to whether this court in this proceeding can give the relief which is really desired by the parties. Langdon claims that he signed as accommodation maker and is entitled to all the rights as surety with the indorsers, who were accommodation indorsers, but the court will pass the technical question and consider the case as if Langdon was asking for contribution from the indorsers as co-surety with them for Wilson.

From the evidence it appears that Wilson was promoting an interurban road through Morrow in Warren county. Other persons were interested with Wilson, but who they were does not appear. Wilson had an office in Cincinnati with Langdon. Langdon expected to derive some benefit from the promotion of the road, but just what or how does not appear. The indorsers are residents of Warren county, and expected to be benefitted by the road when completed. Debold and Whitacre were officers of the plaintiff bank. Money was needed by Wilson to pay some of the preliminary expenses of the survey, for which subscriptions had been made by residents along the line of the proposed road. He and Langdon executed the note and Wilson presented

it to the bank for discount. The bank refused to take it unless it was signed or indorsed by residents of Warren county. Thereupon, at Wilson's request, Smith, Debold and Whitacre indorsed the note, which the bank discounted and the money was placed to the credit of Wilson. Although the evidence is not altogether satisfactory, for the purposes of the case it will be assumed that Langdon signed the note entirely for the accommodation of Wilson, and that the indorsers when they placed their names upon the note, knew such to be the fact. The evidence certainly does not establish that Langdon signed the note for Wilson with any understanding between himself and the indorsers that he was not to be primarily liable upon such note. It will therefore be assumed that as to the bank, Langdon and the indorsers were all either guarantors or sureties for Wilson. Counsel for Langdon rely upon this fact as giving him the right of contribution from such indorsers, and rely on the rule adopted in *Conett* v. *Squair,* 17 Dec., 65.

The indorsers rely on the form of the note as showing that whether Langdon was surety or not they were not co-sureties with Langdon, but sureties or guarantors for him. ·

That the case of *Conett* v. *Squair* supports the contention of Langdon may be admitted, but this court was one of counsel in such case and it may be said that the only reason why no proceedings were taken to reverse such decision was because a satisfactory settlement was offered and accepted before such proceedings were begun. The court in *Conett* v. *Squair,* while necessarily admitting that the parties were entitled to the presumption arising from the form of the note and their position thereon, nevertheless because by parol evidence one of the makers of the note was shown to be an accommodation maker although the accommodation indorser was not shown to have any knowledge of that fact, *held* that such accommodation maker was a co-surety with the accommodation indorser and entitled to contribution as such. The court gave as a reason therefor that, when as between the makers the position of principal and surety was estaglished by parol evidence, although the accommodation indorser did not know of such relation directly or inferentially, he was

charged with the duty of ascertaining the true relation between the makers, and liable as if he indorsed with such knowledge. As the leading case supporting such reasoning, *Whitehouse* v. *Hanson*, 42 N. H., 9, is cited. An examination of such case will show that it is founded upon premises directly contrary to rules laid down by the Ohio Supreme Court. In *Whitehouse* v. *Hanson* the court, as the premises of its conclusion states, that to make a surety upon a note a principal as to another surety, it must be shown that the latter signed at his request, and that one who signs as surety but without the addition of surety to his name, and leaves it in the hands of his principal, does not make the principal his agent to request the other to sign as surety for him as principal. These premises are directly contrary to the rules laid down in *Oldham* v. *Brown*, 28 Ohio St., 41, where it is stated that:

Syl. 4. ''Where a joint note is signed by the principal and by one as his surety and is entrusted by the surety to the principal without limit on his authority, such surety thereby impliedly authorizes the principal to obtain such additional sureties or guarantors as may be required to make the paper available for the purposes intended by the original makers and the sureties or guarantors so obtained may stipulate the terms of their liability, as between themselves and prior parties.''

Syl. 5. ''One who thus signs such note, at the request of the principal debtor, to enable him to use it as intended, without the knowledge of the prior surety, and without any agreement or understanding with him to the contrary, may stipulate with the principal debtor and make it a condition of his signing that he signs as surety of the prior parties, and not as co-surety with the prior party.''

Syl. 6. ''Such stipulation need not be in writing, and parol evidence is admissible to show an express contract to that effect, or facts and circumstances that will raise an implied contract.''

In the present case the indorsers do not rely upon parol evidence, but upon the form of the note as raising not only an implied contract, but a constructive contract that they are sureties for Langdon and not co-sureties with him.

Different premises necessarily lead to different conclusions and the premises in *Whitehouse* v. *Hanson,* being contrary to the

decisions of the Supreme Court of Ohio, the conclusion therein is therefore not necessarily the law of Ohio. The court in *Conett* v. *Squair* cites as an instructive case, *Hauck* v. *Graham*, 106 Ind., 195, but that case is similar to the case of *Crouse* v. *Wagner*, 41 Ohio St., 470, wherein parties already liable on a note, upon the renewal thereof by the form of renewal attempted to change their positions to the prejudice of a new party signing the renewal as surety. In both cases these circumstances were considered as of great weight in the determination of the equities involved. There were no such circumstances in *Conett* v. *Squair*, nor in the case at bar. The other cases cited by the court in *Conett* v. *Squair* are also insufficient to support its reasoning, either because the principles upon which they were decided are contrary to Ohio Supreme Court decisions, or because the form of the note upon which the parties were all sureties, raised no presumption as to any other liability as between themselves than that of co-sureties. In the case of *Conett* v. *Squair*, as well as the case at bar, the indorsers must be presumed to have intentionally selected that form of becoming sureties, and in the absence of parol evidence to the contrary, are entitled to the presumption of liability as between themselves and the makers which the law raises from their relative positions upon the note.

There is no question but that when parties are shown to be sureties the presumption is that they are co-sureties, but such presumption in the case at bar is rebutted by the presumption arising from the form in which they have intentionally cast their obligation. There is no question but that in Ohio, unless the Negotiable Instruments Act has made a change in the law, that all the parties, makers and indorsers of the note in question, could be sued by the payee as makers, and are primarily liable (*Ewan* v. *The Brooks-Waterfield Co.*, 55 Ohio St., 569, 606).

But the question in this case is not with the payee but between the makers and the indorsers. In the absence therefore of evidence rebutting the presumption raised by the position of the parties upon the note, it must be considered that Langdon was not a co-surety with the indorsers, nor entitled to the rights of such.

The case at bar may be considered also in connection with the Negotiable Instruments Act, Section 8296, G. C. (Section 2178*a*, R. C.).

Sec. 8165, G. C. (3173*e*, R. S.). "By making it, the maker of a negotiable instrument engages that he will pay it according to its tenor, and admits the existence of the payee and his then capacity to indorse."

Sec. 8168, G. C. (3173*h*, R. S.). "A person placing his signature upon an instrument otherwise than as maker, drawer or acceptor is deemed to be an indorser, unless he clearly indicates by appropriate words his intention to be bound in some other capacity."

Sec. 8169, G. C. (3173*s*, R. S.). "When a person not otherwise a party to an instrument places thereon his signature in blank before delivery, he is liable as indorser in accordance with the following rules:

"1.   If the instrument is payable to the order of a third person, he is liable to the payee and to all subsequent parties.

"2.   If the instrument is payable to the order of the maker or drawer, or is payable to bearer, he is liable to all parties subsequent to the maker or drawer.

"3.   If he signs for the accommodation of the payee, he is liable to all parties subsequent to the payee."

In the case of *Richards* v. *The Exchange Bank,* 81 Ohio St., 348, 359, it was clearly held that the Negotiable Instruments Act is not a mere codification or revision of existing law, but was a complete system of law on the subject of negotiable instruments, and intended to take the place of conflicting statutes and judicial decisions, and that the rule *expressio unius est exclusio alterius* is therefore particularly applicable to the construction of such act.

Such being the case, when Langdon as maker, and Smith, Debold and Whitacre as indorsers, placed their names upon the note, each assumed certain definite liabilities and acquired certain definite rights. Even if parol evidence is permissible to show that their relations were different, in the absence of competent parol evidence establishing any different relation, the statutory status must be given to them, and no one can be held

to a different liability or given a greater right than prescribed by statute by reason of any act of the other, unless he was a party to such act.

It may be true that the Negotiable Instrument Act does not embrace the equitable rights of contribution, but when the statute fixes the legal right or relation of the parties the equitable right is applied to such legal right or relation.

It follows therefore, that the indorsers upon the note in question, not being parties to any arrangement between Wilson and Langdon, by which Langdon was to be a mere surety as to such indorsers, he is as to such indorsers a maker, and therefore not entitled to the rights of a co-surety.